c. Each Investor agrees that, upon receipt of any notice from the Company of the happening of any event of the kind described in Section 3(g) or the first sentence of 3(f), such Investor will immediately discontinue disposition of Registrable Securities pursuant to any Registration Statement(s) covering such Registrable Securities until such Investor's receipt of the copies of the supplemented or amended prospectus contemplated by Section 3(g) or the first sentence of 3(f) or receipt of notice that no supplement or amendment is required. Notwithstanding anything to the contrary, the Company shall cause its transfer agent to deliver unlegended shares of Common Stock to a transferee of an Investor in accordance with the terms of the Securities Purchase Agreement in connection with any sale of Registrable Securities with respect to which an Investor has entered into a contract for sale prior to the Investor's receipt of a notice from the Company of the happening of any event of the kind described in Section 3(g) or the first sentence of 3(f) and for which the Investor has not yet settled.

d. Each Investor covenants and agrees that it will comply with the prospectus delivery requirements of the 1933 Act as applicable to it or an exemption therefrom in connection with sales of Registrable Securities pursuant to the Registration Statement.

5. <u>Expenses of Registration.</u>

All reasonable expenses, other than underwriting discounts and commissions, incurred in connection with registrations, filings or qualifications pursuant to Sections 2 and 3, including, without limitation, all registration, listing and qualifications fees, printers and accounting fees, and fees and disbursements of counsel for the Company, shall be paid by the Company. The Company shall also reimburse the Investors for the fees and disbursements of Legal Counsel in connection with registration, filing or qualification pursuant to Sections 2 and 3 of this Agreement which amount shall be limited to $15,000.

6. <u>Indemnification.</u>

In the event any Registrable Securities are included in a Registration Statement under this Agreement:

a. To the fullest extent permitted by law, the Company will, and hereby does, indemnify, hold harmless and defend each Investor, the directors, officers, members, partners, employees, agents, representatives of, and each Person, if any, who controls any Investor within the meaning of the 1933 Act or the 1934 Act (each, an **"Indemnified Person"**), against any losses, claims, damages, liabilities, judgments, fines, penalties, charges, costs, reasonable attorneys' fees, amounts paid in settlement or expenses, joint or several, (collectively, **"Claims"**) incurred in investigating, preparing or defending any action, claim, suit, inquiry, proceeding, investigation or appeal taken from the foregoing by or before any court or governmental, administrative or other regulatory agency, body or the SEC, whether pending or threatened, whether or not an indemnified party is or may be a party thereto ("**Indemnified Damages**"), to which any of them may become subject insofar as such Claims (or actions or proceedings, whether commenced or threatened, in respect thereof) arise out of or are based upon: (i) any untrue statement or alleged untrue statement of a material fact in a Registration Statement or any post-effective amendment thereto or in any filing made in connection with the qualification of the offering under the securities or other "blue sky" laws of any jurisdiction in

10074678.5

11

which Registrable Securities are offered ("**Blue Sky Filing**"), or the omission or alleged omission to state a material fact required to be stated therein or necessary to make the statements therein not misleading, (ii) any untrue statement or alleged untrue statement of a material fact contained in any preliminary prospectus if used prior to the effective date of such Registration Statement, or contained in the final prospectus (as amended or supplemented, if the Company files any amendment thereof or supplement thereto with the SEC) or the omission or alleged omission to state therein any material fact necessary to make the statements made therein, in the light of the circumstances under which the statements therein were made, not misleading, (iii) any violation or alleged violation by the Company of the 1933 Act, the 1934 Act, any other law, including, without limitation, any state securities law, or any rule or regulation thereunder relating to the offer or sale of the Registrable Securities pursuant to a Registration Statement or (iv) any violation of this Agreement (the matters in the foregoing clauses (i) through (iv) being, collectively, "**Violations**").    Subject to Section 6(c), the Company shall reimburse the Indemnified Persons, promptly as such expenses are incurred and are due and payable, for any legal fees or other reasonable expenses incurred by them in connection with investigating or defending any such Claim.  Notwithstanding anything to the contrary contained herein, the indemnification agreement contained in this Section 6(a):  (i) shall not apply to a Claim by an Indemnified Person arising out of or based upon a Violation which occurs in reliance upon and in conformity with information furnished in writing to the Company by such Indemnified Person for such Indemnified Person expressly for use in connection with the preparation of the Registration Statement or any such amendment thereof or supplement thereto, if such prospectus was timely made available by the Company pursuant to Section 3(d) and (ii) shall not apply to amounts paid in settlement of any Claim if such settlement is effected without the prior written consent of the Company, which consent shall not be unreasonably withheld or delayed.  Such indemnity shall remain in full force and effect regardless of any investigation made by or on behalf of the Indemnified Person and shall survive the transfer of the Registrable Securities by the Investors pursuant to Section 9.

b.  In connection with any Registration Statement in which an Investor is participating, each such Investor agrees to severally and not jointly indemnify, hold harmless and defend, to the same extent and in the same manner as is set forth in Section 6(a), the Company, each of its directors, each of its officers who signs the Registration Statement and each Person, if any, who controls the Company within the meaning of the 1933 Act or the 1934 Act (each, an "**Indemnified Party**"), against any Claim or Indemnified Damages to which any of them may become subject, under the 1933 Act, the 1934 Act or otherwise, insofar as such Claim or Indemnified Damages arise out of or are based upon any Violation, in each case to the extent, and only to the extent, that such Violation occurs in reliance upon and in conformity with written information furnished to the Company by such Investor expressly for use in connection with such Registration Statement; and, subject to Section 6(c), such Investor will reimburse any legal or other expenses reasonably incurred by an Indemnified Party in connection with investigating or defending any such Claim; provided, however, that the indemnity agreement contained in this Section 6(b) and the agreement with respect to contribution contained in Section 7 shall not apply to amounts paid in settlement of any Claim if such settlement is effected without the prior written consent of such Investor, which consent shall not be unreasonably withheld or delayed; provided, further, however, that the Investor shall be liable under this Section 6(b) for only that amount of a Claim or Indemnified Damages as does not exceed the net proceeds to such Investor as a result of the sale of Registrable Securities pursuant to such Registration Statement.  Such

10074678.5

indemnity shall remain in full force and effect regardless of any investigation made by or on behalf of such Indemnified Party and shall survive the transfer of the Registrable Securities by the Investors pursuant to Section 9.

c. Promptly after receipt by an Indemnified Person or Indemnified Party under this Section 6 of notice of the commencement of any action or proceeding (including any governmental action or proceeding) involving a Claim, such Indemnified Person or Indemnified Party shall, if a Claim in respect thereof is to be made against any indemnifying party under this Section 6, deliver to the indemnifying party a written notice of the commencement thereof, and the indemnifying party shall have the right to participate in, and, to the extent the indemnifying party so desires, jointly with any other indemnifying party similarly noticed, to assume control of the defense thereof with counsel mutually satisfactory to the indemnifying party and the Indemnified Person or the Indemnified Party, as the case may be; provided, however, that an Indemnified Person or Indemnified Party shall have the right to retain its own counsel with the fees and expenses of not more than one counsel for such Indemnified Person or Indemnified Party to be paid by the indemnifying party, if, in the reasonable opinion of counsel retained by the indemnifying party, the representation by such counsel of the Indemnified Person or Indemnified Party and the indemnifying party would be inappropriate due to actual or potential differing interests between such Indemnified Person or Indemnified Party and any other party represented by such counsel in such proceeding. In the case of an Indemnified Person, legal counsel referred to in the immediately preceding sentence shall be selected by the Investors holding at least a majority in interest of the Registrable Securities included in the Registration Statement to which the Claim relates. The Indemnified Party or Indemnified Person shall cooperate fully with the indemnifying party in connection with any negotiation or defense of any such action or Claim by the indemnifying party and shall furnish to the indemnifying party all information reasonably available to the Indemnified Party or Indemnified Person which relates to such action or Claim. The indemnifying party shall keep the Indemnified Party or Indemnified Person reasonably apprised at all times as to the status of the defense or any settlement negotiations with respect thereto. No indemnifying party shall be liable for any settlement of any action, claim or proceeding effected without its prior written consent; provided, however, that the indemnifying party shall not unreasonably withhold, delay or condition its consent. No indemnifying party shall, without the prior written consent of the Indemnified Party or Indemnified Person, consent to entry of any judgment or enter into any settlement or other compromise which does not include as an unconditional term thereof the giving by the claimant or plaintiff to such Indemnified Party or Indemnified Person of a release from all liability in respect to such Claim or litigation, and such settlement shall not include any admission as to fault on the part of the Indemnified Party. Following indemnification as provided for hereunder, the indemnifying party shall be subrogated to all rights of the Indemnified Party or Indemnified Person with respect to all third parties, firms or corporations relating to the matter for which indemnification has been made. The failure to deliver written notice to the indemnifying party within a reasonable time of the commencement of any such action shall not relieve such indemnifying party of any liability to the Indemnified Person or Indemnified Party under this Section 6, except to the extent that the indemnifying party is prejudiced in its ability to defend such action.

d. The indemnification required by this Section 6 shall be made by periodic payments of the amount thereof during the course of the investigation or defense, as and when bills are received or Indemnified Damages are incurred.

e. No Person involved in the sale of Registrable Securities who is guilty of fraudulent misrepresentation (within the meaning of Section 11(f) of the Securities Act) in connection with such sale shall be entitled to indemnification from any Person involved in such sale of Registrable Securities who is not guilty of fraudulent misrepresentation.

f. The indemnity agreements contained herein shall be in addition to (i) any cause of action or similar right of the Indemnified Party or Indemnified Person against the indemnifying party or others, and (ii) any liabilities the indemnifying party may be subject to pursuant to the law.

7. Contribution.

To the extent any indemnification by an indemnifying party is prohibited or limited by law, the indemnifying party agrees to make the maximum contribution with respect to any amounts for which it would otherwise be liable under Section 6 to the fullest extent permitted by law; provided, however, that: (i) no contribution shall be made under circumstances where the maker would not have been liable for indemnification under the fault standards set forth in Section 6 of this Agreement, (ii) no Person involved in the sale of Registrable Securities, which Person is guilty of fraudulent misrepresentation (within the meaning of Section 11(f) of the 1933 Act) in connection with such sale, shall be entitled to contribution from any Person involved in such sale of Registrable Securities who was not guilty of fraudulent misrepresentation; and (iii) contribution by any seller of Registrable Securities shall be limited in amount to the net amount of proceeds received by such seller from the sale of such Registrable Securities pursuant to such Registration Statement.

8. Reports Under the 1934 Act.

With a view to making available to the Investors the benefits of Rule 144 promulgated under the 1933 Act or any other similar rule or regulation of the SEC that may at any time permit the Investors to sell securities of the Company to the public without registration ("**Rule 144**"), the Company agrees to:

a. make and keep public information available, as those terms are understood and defined in Rule 144;

b. file with the SEC in a timely manner all reports and other documents required of the Company under the 1933 Act and the 1934 Act so long as the Company remains subject to such requirements and the filing of such reports and other documents is required for the applicable provisions of Rule 144; and

c. furnish to each Investor so long as such Investor owns Registrable Securities, promptly upon request, (i) a written statement by the Company, if true, that it has complied with the reporting requirements of Rule 144, the 1933 Act and the 1934 Act, (ii) a copy of the most recent annual report of the Company and such other reports and documents so filed

10074678.5

by the Company (but only if such reports are not publicly available on the EDGAR System) and (iii) such other information as may be reasonably requested to permit the Investors to sell such securities pursuant to Rule 144 without registration.

9. Assignment of Registration Rights.

The rights under this Agreement shall be automatically assignable by the Investors to any transferee of all or any portion of such Investor's Registrable Securities if: (i) the Investor agrees in writing with the transferee or assignee to assign such rights, and a copy of such agreement is furnished to the Company within a reasonable time after such assignment; (ii) the Company is, within a reasonable time after such transfer or assignment, furnished with written notice of (a) the name and address of such transferee or assignee and (b) the securities with respect to which such registration rights are being transferred or assigned; (iii) immediately following such transfer or assignment the further disposition of such securities by the transferee or assignee is restricted under the 1933 Act or applicable state securities laws; (iv) at or before the time the Company receives the written notice contemplated by clause (ii) of this sentence the transferee or assignee agrees in writing with the Company to be bound by all of the provisions contained herein; and (v) such transfer shall have been made in accordance with the applicable requirements of the Securities Purchase Agreement (including the furnishing by the Investor to the Company of an opinion of counsel reasonably acceptable to the Company, prior to such transfer, that such Registrable Securities may be so transferred in a transaction that does not require registration under the 1933 Act).

10. Amendment of Registration Rights.

Provisions of this Agreement may be amended and the observance thereof may be waived (either generally or in a particular instance and either retroactively or prospectively), only with the written consent of the Company and the Required Holders. Any amendment or waiver effected in accordance with this Section 10 shall be binding upon each Investor and the Company. No such amendment shall be effective to the extent that it applies to less than all of the holders of the Registrable Securities. No consideration shall be offered or paid to any Person to amend or consent to a waiver or modification of any provision of any of this Agreement unless the same consideration also is offered to all of the parties to this Agreement.

11. Miscellaneous.

a. A Person is deemed to be a holder of Registrable Securities whenever such Person owns or is deemed to own of record such Registrable Securities. If the Company receives conflicting instructions, notices or elections from two or more Persons with respect to the same Registrable Securities, the Company shall act upon the basis of instructions, notice or election received from the such record owner of such Registrable Securities.

b. Any notices, consents, waivers or other communications required or permitted to be given under the terms of this Agreement must be in writing and will be deemed to have been delivered: (i) upon receipt, when delivered personally; (ii) upon receipt, when sent by facsimile (provided confirmation of transmission is mechanically or electronically generated and kept on file by the sending party); or (iii) one Business Day after deposit with a nationally

10074678.5

recognized overnight delivery service, in each case properly addressed to the party to receive the same. The addresses and facsimile numbers for such communications shall be:

If to the Company:

    The Allied Defense Group, Inc.
    8000 Towers Crescent Drive
    Suite 260
    Vienna, Virginia 22182
    Telephone:   (703) 847-5268
    Facsimile:   (703) 847-5334
    Attention:   Chief Financial Officer

With a copy to:

    Baxter, Baker, Sidle, Conn & Jones
    Sun Trust Building, Suite 2100
    120 E. Baltimore Street
    Baltimore, Maryland 21202
    Telephone: (410) 230-3800
    Facsimile: (410) 230-3801
    Attention: James E. Baker, Jr.

If to Legal Counsel:

    Schulte Roth & Zabel LLP
    919 Third Avenue
    New York, New York  10022
    Telephone: (212) 756-2000
    Facsimile: (212) 593-5955
    Attention: Eleazer N. Klein, Esq.

If to a Buyer, to its address and facsimile number set forth on the Schedule of Buyers attached hereto, with copies to such Buyer's representatives as set forth on the Schedule of Buyers, or to such other address and/or facsimile number and/or to the attention of such other Person as the recipient party has specified by written notice given to each other party five (5) days prior to the effectiveness of such change. Written confirmation of receipt (A) given by the recipient of such notice, consent, waiver or other communication, (B) mechanically or electronically generated by the sender's facsimile machine containing the time, date, recipient facsimile number and an image of the first page of such transmission or (C) provided by a courier or overnight courier service shall be rebuttable evidence of personal service, receipt by facsimile or receipt from a nationally recognized overnight delivery service in accordance with clause (i), (ii) or (iii) above, respectively.

c. Failure of any party to exercise any right or remedy under this Agreement or otherwise, or delay by a party in exercising such right or remedy, shall not operate as a waiver thereof.

d. All questions concerning the construction, validity, enforcement and interpretation of this Agreement shall be governed by the internal laws of the State of New York, without giving effect to any choice of law or conflict of law provision or rule (whether of the State of New York or any other jurisdictions) that would cause the application of the laws of any jurisdictions other than the State of New York. Each party hereby irrevocably submits to the exclusive jurisdiction of the state and federal courts sitting in The City of New York, Borough of Manhattan, for the adjudication of any dispute hereunder or in connection herewith or with any transaction contemplated hereby or discussed herein, and hereby irrevocably waives, and agrees not to assert in any suit, action or proceeding, any claim that it is not personally subject to the jurisdiction of any such court, that such suit, action or proceeding is brought in an inconvenient forum or that the venue of such suit, action or proceeding is improper. Each party hereby irrevocably waives personal service of process and consents to process being served in any such suit, action or proceeding by mailing a copy thereof to such party at the address for such notices to it under this Agreement and agrees that such service shall constitute good and sufficient service of process and notice thereof. Nothing contained herein shall be deemed to limit in any way any right to serve process in any manner permitted by law. If any provision of this Agreement shall be invalid or unenforceable in any jurisdiction, such invalidity or unenforceability shall not affect the validity or enforceability of the remainder of this Agreement in that jurisdiction or the validity or enforceability of any provision of this Agreement in any other jurisdiction. **EACH PARTY HEREBY IRREVOCABLY WAIVES ANY RIGHT IT MAY HAVE, AND AGREES NOT TO REQUEST, A JURY TRIAL FOR THE ADJUDICATION OF ANY DISPUTE HEREUNDER OR IN CONNECTION HEREWITH OR ARISING OUT OF THIS AGREEMENT OR ANY TRANSACTION CONTEMPLATED HEREBY.**

e. This Agreement, the other Transaction Documents (as defined in the Securities Purchase Agreement) and the instruments referenced herein and therein constitute the entire agreement among the parties hereto with respect to the subject matter hereof and thereof. There are no restrictions, promises, warranties or undertakings, other than those set forth or referred to herein and therein. This Agreement, the other Transaction Documents and the instruments referenced herein and therein supersede all prior agreements and understandings among the parties hereto with respect to the subject matter hereof and thereof.

f. Subject to the requirements of Section 9, this Agreement shall inure to the benefit of and be binding upon the permitted successors and assigns of each of the parties hereto.

g. The headings in this Agreement are for convenience of reference only and shall not limit or otherwise affect the meaning hereof.

h. This Agreement may be executed in identical counterparts, each of which shall be deemed an original but all of which shall constitute one and the same agreement. This Agreement, once executed by a party, may be delivered to the other party hereto by

facsimile transmission of a copy of this Agreement bearing the signature of the party so delivering this Agreement.

i.   Each party shall do and perform, or cause to be done and performed, all such further acts and things, and shall execute and deliver all such other agreements, certificates, instruments and documents, as any other party may reasonably request in order to carry out the intent and accomplish the purposes of this Agreement and the consummation of the transactions contemplated hereby.

j.   All consents and other determinations required to be made by the Investors pursuant to this Agreement shall be made, unless otherwise specified in this Agreement, by the Required Holders.

k.   The language used in this Agreement will be deemed to be the language chosen by the parties to express their mutual intent and no rules of strict construction will be applied against any party.

l.   This Agreement is intended for the benefit of the parties hereto and their respective permitted successors and assigns, and is not for the benefit of, nor may any provision hereof be enforced by, any other Person.

m.   The obligations of each Buyer hereunder are several and not joint with the obligations of any other Buyer, and no provision of this Agreement is intended to confer any obligations on any Buyer vis-à-vis any other Buyer.  Nothing contained herein, and no action taken by any Buyer pursuant hereto, shall be deemed to constitute the Buyers as a partnership, an association, a joint venture or any other kind of entity, or create a presumption that the Buyers are in any way acting in concert or as a group with respect to such obligations or the transactions contemplated herein.

* * * * * *

IN WITNESS WHEREOF, each Buyer and the Company have caused their respective signature page to this Registration Rights Agreement to be duly executed as of the date first written above.

**COMPANY:**

**THE ALLIED DEFENSE GROUP, INC.**

By: _____

Name:    John J. Marcello

Title:    President and CEO

**IN WITNESS WHEREOF**, each Buyer and the Company have caused their respective signature page to this Registration Rights Agreement to be duly executed as of the date first written above.

**BUYERS:**

**KINGS ROAD INVESTMENTS LTD.**

By: _____

Name: *Brandon L. Jones*

Title: *Authorized Signatory*

IN WITNESS WHEREOF, each Buyer and the Company have caused their respective signature page to this Registration Rights Agreement to be duly executed as of the date first written above.

PORTSIDE GROWTH & OPPORTUNITY FUND

By: _____

Name: JEFFREY C. SMITH
Title: AUTHORIZED SIGNATURE

**IN WITNESS WHEREOF,** each Buyer and the Company have caused their respective signature page to this Registration Rights Agreement to be duly executed as of the date first written above.

**CASTLERIGG MASTER INVESTMENTS LTD.**
**BY: SANDELL ASSET MANAGEMENT CORP.**

By: _____

    Name:   Patrick T. Burke
    Title:    Senior Managing Director

10074678.5

**IN WITNESS WHEREOF,** each Buyer and the Company have caused their respective signature page to this Registration Rights Agreement to be duly executed as of the date first written above.

**LB I GROUP INC.**

By: _____

Name: HENRY KLEIN

Title: M.D

# SCHEDULE OF BUYERS

| Buyer | Buyer's Address and Facsimile Number | Buyer's Representative's Address and Facsimile Number |
|---|---|---|
| Kings Road Investments Ltd. | c/o Polygon Investment Partners LP<br>598 Madison Avenue, 14th Floor<br>New York, New York 10022<br>Attention: Erik M.W. Caspersen and<br>Brandon L. Jones<br>Facsimile: (212) 359-7303<br>Telephone: (212) 359-7300<br>Residence: Cayman Islands | Schulte Roth & Zabel LLP<br>919 Third Avenue<br>New York, New York 10022<br>Attn: Eleazer Klein, Esq.<br>Facsimile: (212) 593-5955<br>Telephone: (212) 756-2000 |
| Portside Growth & Opportunity Fund | c/o Ramius Capital Group, L.L.C.<br>666 Third Avenue, 26th Floor<br>New York, New York 10017<br>Attention: Jeffrey Smith<br>Owen Littman<br>Facsimile: (212) 845-7999<br>(212) 845-7995<br>Telephone: (212) 845-7955<br>(212) 201-4841<br>Residence: Cayman Islands | |
| Castlerigg Master Investments Ltd. | c/o Sandell Asset Management<br>40 West 57th St<br>26th Floor<br>New York, NY 10019<br>Attention: Cem Hacioglu / Matthew Pliskin<br>Telephone: 212-603-5700<br>Fax: 212-603-5710<br>Residence: British Virgin Islands | |
| LB I Group Inc. | c/o Lehman Brothers Inc.<br>Att: Will Yelsits<br>399 Park Ave<br>NY, NY 10022 | |

**EXHIBIT A**

**FORM OF NOTICE OF EFFECTIVENESS**
**OF REGISTRATION STATEMENT**

Mellon Investor Services, LLC
85 Challenger Road
Ridgefield, New Jersey 07660

    Re:  The Allied Defense Group, Inc.

Ladies and Gentlemen:

    [We are][I am] counsel to The Allied Defense Group, Inc., a Delaware corporation (the "**Company**"), and have represented the Company in connection with that certain Securities Purchase Agreement (the "**Securities Purchase Agreement**") entered into by and among the Company and the buyers named therein (collectively, the "**Holders**") pursuant to which the Company issued to the Holders senior subordinated convertible notes (the "**Notes**") convertible into the Company's common stock, $0.10 par value per share (the "**Common Stock**") and warrants exercisable for shares of Common Stock (the "**Warrants**").  Pursuant to the Securities Purchase Agreement, the Company also has entered into a Registration Rights Agreement with the Holders (the "**Registration Rights Agreement**") pursuant to which the Company agreed, among other things, to register the Registrable Securities (as defined in the Registration Rights Agreement), including the shares of Common Stock issuable upon conversion and/or redemption of the Notes and the shares of Common Stock issuable upon exercise of the Warrants, under the Securities Act of 1933, as amended (the "**1933 Act**").  In connection with the Company's obligations under the Registration Rights Agreement, on _____ ____, 200_, the Company filed a Registration Statement on Form S-3 (File No. 333-_____) (the "**Registration Statement**") with the Securities and Exchange Commission (the "**SEC**") relating to the Registrable Securities which names each of the Holders as a selling stockholder thereunder.

    In connection with the foregoing, [we][I] advise you that a member of the SEC's staff has advised [us][me] by telephone that the SEC has entered an order declaring the Registration Statement effective under the 1933 Act at [ENTER TIME OF EFFECTIVENESS] on [ENTER DATE OF EFFECTIVENESS] and [we][I] have no knowledge, after telephonic inquiry of a member of the SEC's staff, that any stop order suspending its effectiveness has been issued or that any proceedings for that purpose are pending before, or threatened by, the SEC and the Registrable Securities are available for resale under the 1933 Act pursuant to the Registration Statement.

    This letter shall serve as our standing confirmation to you of the Company's instruction that the shares of Common Stock are freely transferable by the Holders pursuant to the Registration Statement.  You need not require further letters from us to effect any future legend-free issuance or reissuance of shares of Common Stock to the Holders as contemplated by

10074678.5
1

the Company's Irrevocable Transfer Agent Instructions dated March 9, 2006.

Very truly yours,

[ISSUER'S COUNSEL]

By:_____

CC:     **[LIST NAMES OF HOLDERS]**

EXHIBIT B

## SELLING STOCKHOLDERS

The shares of common stock being offered by the selling stockholders are issuable upon conversion and/or redemption of the convertible notes and upon exercise of the warrants. For additional information regarding the issuance of those convertible notes and warrants, see "Private Placement of Shares of Convertible Notes and Warrants" above. We are registering the shares of common stock in order to permit the selling stockholders to offer the shares for resale from time to time. Except for the ownership of the convertible notes and warrants issued pursuant to the securities purchase agreement, the selling stockholders have not had any material relationship with us within the past three years.

The table below lists the selling stockholders and other information regarding the beneficial ownership of the shares of common stock by each of the selling stockholders. The second column lists the number of shares of common stock beneficially owned by each selling stockholder, based on its ownership of the convertible notes and warrants, as of _____, 200_, assuming conversion and/or redemption of all convertible notes and exercise of the warrants held by the selling stockholders on that date, without regard to any limitations on conversions, redemptions or exercise.

The third column lists the shares of common stock being offered by this prospectus by the selling stockholders.

In accordance with the terms of a registration rights agreement among the Company and the selling stockholders, this prospectus generally covers the resale of at least 120% of the sum of (i) the number of shares of common stock issuable upon conversion and/or redemption of the convertible notes as of the trading day immediately preceding the date the registration statement is initially filed with the SEC and (ii) the number of shares of common stock issuable upon exercise of the related warrants as of the trading day immediately preceding the date the registration statement is initially filed with the SEC. Because the conversion price of the convertible notes and the exercise price of the warrants may be adjusted, the number of shares that will actually be issued may be more or less than the number of shares being offered by this prospectus. The fourth column assumes the sale of all of the shares offered by the selling stockholders pursuant to this prospectus.

Under the terms of the convertible notes and the warrants, a selling stockholder may not convert the convertible notes or exercise the warrants to the extent such conversion, redemption or exercise would cause such selling stockholder, together with its affiliates, to beneficially own a number of shares of common stock which would exceed 9.99% of our then outstanding shares of common stock following such conversion, redemption or exercise, excluding for purposes of such determination shares of common stock issuable upon conversion and/or redemption of the convertible notes which have not been converted or redeemed and upon exercise of the warrants that have not been exercised. The number of shares in the second column does not reflect this limitation. The selling stockholders may sell all, some or none of their shares in this offering. See "Plan of Distribution."

10074678.5

1

| Name of Selling Stockholder | Number of Shares Owned Prior to Offering | Maximum Number of Shares to be Sold Pursuant to this Prospectus | Number of Shares Owned After Offering |
|---|---|---|---|
| Kings Road Investments Ltd. (1) | | | |
| Portside Growth & Opportunity Fund (2) | | | |
| Castlerigg Master Investments Ltd. (3) | | | |
| LB I Group Inc. | | | 0 |

(1) Polygon Investment Partners LLP and Polygon Investment Partners LP (the "Investment Managers") and Polygon Investments Ltd. (the "Manager") each has the right to vote and dispose of the securities held by Kings Road Investments Ltd. Alexander Jackson, Reade Griffith and Paddy Dear control the Investment Managers and the Manager. The Investment Managers, the Manager, Alexander Jackson, Reade Griffith and Paddy Dear disclaim beneficial ownership of the securities held by Kings Road Investments Ltd.

(2) Ramius Capital Group, LLC ("Ramius Capital") is the investment adviser of Portside Growth and Opportunity Fund ("Portside") and consequently has voting control and investment discretion over securities held by Portside. Ramius Capital disclaims beneficial ownership of the shares held by Portside. Peter A. Cohen, Morgan B. Stark, Thomas W. Strauss and Jeffrey M. Solomon are the sole managing members of C4S& Co., LLC, the sole managing member of Ramius Capital. As a result, Messrs. Cohen, Stark, Strauss and Solomon may be considered beneficial owners of any shares deemed to be beneficially owned by Ramius Capital. Messrs. Cohen, Stark, Strauss and Solomon disclaim beneficial ownership of these shares.

(3) Sandell Asset Management Corp. is the investment manager of Castlerigg Master Investment Ltd. ("Castlerigg") and has shared voting and dispositive power over the securities owned by Castlerigg. Sandell Asset Management Corp. and Thomas E. Sandell, its sole shareholder, disclaim beneficial ownership of the securities owned by Castlerigg.

## PLAN OF DISTRIBUTION

We are registering the shares of common stock issuable upon conversion and/or redemption of the convertible notes and upon exercise of the warrants to permit the resale of these shares of common stock by the holders of the convertible notes and warrants from time to time after the date of this prospectus. We will not receive any of the proceeds from the sale by the selling stockholders of the shares of common stock. We will bear all fees and expenses incident to our obligation to register the shares of common stock.

The selling stockholders may sell all or a portion of the shares of common stock beneficially owned by them and offered hereby from time to time directly or through one or more underwriters, broker-dealers or agents. If the shares of common stock are sold through underwriters or broker-dealers, the selling stockholders will be responsible for underwriting discounts or commissions or agent's commissions. The shares of common stock may be sold in one or more transactions at fixed prices, at prevailing market prices at the time of the sale, at varying prices determined at the time of sale, or at negotiated prices. These sales may be effected in transactions, which may involve crosses or block transactions,

- on any national securities exchange or quotation service on which the securities may be listed or quoted at the time of sale;

- in the over-the-counter market;

- in transactions otherwise than on these exchanges or systems or in the over-the-counter market;

- through the writing of options, whether such options are listed on an options exchange or otherwise;

- ordinary brokerage transactions and transactions in which the broker-dealer solicits purchasers;

- block trades in which the broker-dealer will attempt to sell the shares as agent but may position and resell a portion of the block as principal to facilitate the transaction;

- purchases by a broker-dealer as principal and resale by the broker-dealer for its account;

- an exchange distribution in accordance with the rules of the applicable exchange;

- privately negotiated transactions;

- short sales;

- sales pursuant to Rule 144;

- broker-dealers may agree with the selling securityholders to sell a specified number of such shares at a stipulated price per share;

- a combination of any such methods of sale; and

- any other method permitted pursuant to applicable law.

If the selling stockholders effect such transactions by selling shares of common stock to or through underwriters, broker-dealers or agents, such underwriters, broker-dealers or agents may receive commissions in the form of discounts, concessions or commissions from the selling stockholders or commissions from purchasers of the shares of common stock for whom they may act as agent or to whom they may sell as principal (which discounts, concessions or commissions as to particular underwriters, broker-dealers or agents may be in excess of those customary in the types of transactions involved). In connection with sales of the shares of common stock or otherwise, the selling stockholders may enter into hedging transactions with broker-dealers, which may in turn engage in short sales of the shares of common stock in the course of hedging in positions they assume. The selling stockholders may also sell shares of common stock short and deliver shares of common stock covered by this prospectus to close out short positions and to return borrowed shares in connection with such short sales. The selling stockholders may also loan or pledge shares of common stock to broker-dealers that in turn may sell such shares.

The selling stockholders may pledge or grant a security interest in some or all of the convertible notes, or warrants or shares of common stock owned by them and, if they default in the performance of their secured obligations, the pledgees or secured parties may offer and sell the shares of common stock from time to time pursuant to this prospectus or any amendment to this prospectus under Rule 424(b)(3) or other applicable provision of the Securities Act of 1933, as amended, amending, if necessary, the list of selling stockholders to include the pledgee, transferee or other successors in interest as selling stockholders under this prospectus. The selling stockholders also may transfer and donate the shares of common stock in other circumstances in which case the transferees, donees, pledgees or other successors in interest will be the selling beneficial owners for purposes of this prospectus.

The selling stockholders and any broker-dealer participating in the distribution of the shares of common stock may be deemed to be "underwriters" within the meaning of the Securities Act, and any commission paid, or any discounts or concessions allowed to, any such broker-dealer may be deemed to be underwriting commissions or discounts under the Securities Act. At the time a particular offering of the shares of common stock is made, a prospectus supplement, if required, will be distributed which will set forth the aggregate amount of shares of common stock being offered and the terms of the offering, including the name or names of any broker-dealers or agents, any discounts, commissions and other terms constituting compensation from the selling stockholders and any discounts, commissions or concessions allowed or reallowed or paid to broker-dealers.

Under the securities laws of some states, the shares of common stock may be sold in such states only through registered or licensed brokers or dealers. In addition, in some states the shares of common stock may not be sold unless such shares have been registered or qualified for

sale in such state or an exemption from registration or qualification is available and is complied with.

There can be no assurance that any selling stockholder will sell any or all of the shares of common stock registered pursuant to the shelf registration statement, of which this prospectus forms a part.

The selling stockholders and any other person participating in such distribution will be subject to applicable provisions of the Securities Exchange Act of 1934, as amended, and the rules and regulations thereunder, including, without limitation, Regulation M of the Exchange Act, which may limit the timing of purchases and sales of any of the shares of common stock by the selling stockholders and any other participating person. Regulation M may also restrict the ability of any person engaged in the distribution of the shares of common stock to engage in market-making activities with respect to the shares of common stock. All of the foregoing may affect the marketability of the shares of common stock and the ability of any person or entity to engage in market-making activities with respect to the shares of common stock.

We will pay all expenses of the registration of the shares of common stock pursuant to the registration rights agreement, estimated to be $[    ] in total, including, without limitation, Securities and Exchange Commission filing fees and expenses of compliance with state securities or "blue sky" laws; provided, however, that a selling stockholder will pay all underwriting discounts and selling commissions, if any.  We will indemnify the selling stockholders against liabilities, including some liabilities under the Securities Act, in accordance with the registration rights agreements, or the selling stockholders will be entitled to contribution.  We may be indemnified by the selling stockholders against civil liabilities, including liabilities under the Securities Act, that may arise from any written information furnished to us by the selling stockholder specifically for use in this prospectus, in accordance with the related registration rights agreement, or we may be entitled to contribution.

Once sold under the shelf registration statement, of which this prospectus forms a part, the shares of common stock will be freely tradable in the hands of persons other than our affiliates.

EXHIBIT C

## SELLING STOCKHOLDER QUESTIONNAIRE

The undersigned hereby provides the following information to the Company and represents and warrants that such information is accurate:

1.    **Name.**

    (a)    Full Legal Name of Selling Securityholder

                _____

    (b)    Full Legal Name of Registered Holder (if not the same as (a) above) through which Registrable Securities Listed in Item 3 below are held:

                _____

    (c)    Full Legal Name of Natural Control Person (which means a natural person who directly or indirectly alone or with others has power to vote or dispose of the securities covered by the questionnaire):

                _____

**2.  Address for Notices to Selling Securityholder:**

_____
_____
Telephone:_____
Fax:_____
Contact Person:_____

**3.  Beneficial Ownership of Registrable Securities:**

    Type and Principal Amount of Registrable Securities beneficially owned:

                _____
                _____
                _____

**4. Broker-Dealer Status:**

    (a)    Are you a broker-dealer?

                Yes ☐      No ☐

    (b)    Are you an affiliate of a broker-dealer?

                Yes ☐      No ☐

    (c)    If you are an affiliate of a broker-dealer, do you certify that you bought the Registrable Securities in the ordinary course of business, and at the time of the purchase of the Registrable Securities to be resold, you had no agreements or understandings, directly or indirectly, with any person to distribute the Registrable Securities?

                Yes ☐      No ☐

**5. Beneficial Ownership of Other Securities of the Company Owned by the Selling Securityholder.**

*Except as set forth below in this Item 5, the undersigned is not the beneficial or registered owner of any securities of the Company other than the Registrable Securities listed above in Item 3.*

    Type and Amount of Other Securities beneficially owned by the Selling Securityholder:

_____

_____

**6. Relationships with the Company:**

*Except as set forth below, neither the undersigned nor any of its affiliates, officers, directors or principal equity holders (owners of 5% of more of the equity securities of the undersigned) has held any position or office or has had any other material relationship with the Company (or its predecessors or affiliates) during the past three years.*

State any exceptions here:

_____

_____

The undersigned agrees to promptly notify the Company of any material inaccuracies or changes in the information provided herein that may occur subsequent to the date hereof and prior to the Effective Date for the Registration Statement.

By signing below, the undersigned consents to the disclosure of the information contained herein in its answers to Items 1 through 6 and the inclusion of such information in the Registration Statement and the related prospectus. The undersigned understands that such information will be relied upon by the Company in connection with the preparation or amendment of the Registration Statement and the related prospectus.

IN WITNESS WHEREOF the undersigned, by authority duly given, has caused this Questionnaire to be executed and delivered either in person or by its duly authorized agent.

Dated: _____     Beneficial Owner: _____

By: _____
    Name:
    Title:

**PLEASE FAX A COPY OF THE COMPLETED AND EXECUTED NOTICE AND QUESTIONNAIRE, AND RETURN THE ORIGINAL BY OVERNIGHT MAIL, TO:**

[   ]

10074678.5

6

EXHIBIT D

# POLYGON

Polygon Investment Partners LP    Main  + 1 212 359 7300
598  Madison Avenue               Fax   + 1 212 359 7301
14th Floor
New York, NY 10022
United States of America

December 18, 2006

**VIA FACSIMILE AND**
**OVERNIGHT COURIER**

The Allied Defense Group, Inc.
8000 Towers Crescent Drive
Suite 260
Vienna, Virginia 22182
Telephone:    (703) 847-5268
Facsimile:    (703) 847-5334
Attention:    Chief Financial Officer

Event of Default Redemption Notice

Ladies and Gentlemen:

   Reference is made to the senior subordinated convertible note issued by The Allied Defense Group, Inc., a Delaware corporation (the "**Company**"), to Kings Road Investments Ltd. (the "**Holder**" or undersigned), in the original principal amount of $12,500,000 (the "**Note**"), pursuant to the Securities Purchase Agreement, dated as of March 9, 2006 (the "**Securities Purchase Agreement**"), by and among the Company and the investors listed on the Schedule of Buyers attached thereto.  Any capitalized term used herein and not defined herein shall have the meaning assigned to it in the Note or the Securities Purchase Agreement.

   This notice constitutes an Event of Default Redemption Notice in accordance with the terms of Section 4(b) of the Note.  Among other things, and without limiting any right the undersigned may have to declare other defaults or Events of Default by the Company, the Company has failed to pay the Registration Delay Payments (as such term is defined in the Registration Rights Agreement), and, therefore, an Event of Default has occurred as set forth in Section 4(a)(v) of the Note.  Among other breaches that may have occurred, the Company failed to pay the Registration Delay Payment on October 1, 2006 that was incurred as a result of its failure to file its Registration Statement by September 30, 2006, the Filing Deadline (as defined in the Registration Rights Agreement), and additional Registration Delay Payments on October 31, 2006 and November 7, 2006.

10309125.1

# POLYGON

As a result of the occurrence of the above mentioned Event of Default, the undersigned hereby notifies the Company of its election to exercise its redemption right pursuant to Section 4(b) of the Note and hereby submits this Event of Default Redemption Notice. The undersigned hereby elects to redeem the entire Note in full at the Event of Default Redemption Price. The Company shall pay to the undersigned Holder the Event of Default Redemption Price within five (5) Business Days from the receipt of this Event of Default Redemption Notice pursuant to Section 12(a) of the Note. For purposes of calculating the Event of Default Redemption Price, the applicable Interest Rate shall be 12.5% for the period commencing October 1, 2006 and through the date of payment of the Event of Default Redemption Price, as set forth in Section 2 of the Note.

This letter is without prejudice to the undersigned, and the undersigned fully and specifically reserves any and all rights, powers, privileges and remedies under the Transaction Documents. Nothing herein shall be construed to suggest that there are not currently existing other Events of Default, and the undersigned reserves all of its rights with respect to any such Events of Default.

This letter shall not entitle the Company or any other party to further notice or demand.

Sincerely yours,

KINGS ROAD INVESTMENTS LTD.

By:

Name: Erik M. W. Caspersen
Title:  Authorized Signatory

Cc:   Baxter, Baker, Sidle, Conn & Jones
      Sun Trust Building
      Suite 2100
      120 E. Baltimore Street
      Baltimore, Maryland 21202
      Telephone: (410) 230-8122
      Facsimile: (410) 230-3801
      Attention: James E. Baker, Jr., Esq.

10309125.1

EXHIBIT E

# POLYGON

Polygon Investment Partners LP   Main  + 1 212 359 7300
598  Madison Avenue               Fax   + 1 212 359 7301
14th Floor
New York, NY 10022
United States of America

February 20, 2007

**VIA FACSIMILE AND
OVERNIGHT COURIER**

The Allied Defense Group, Inc.
8000 Towers Crescent Drive
Suite 260
Vienna, Virginia 22182
Telephone:    (703) 847-5268
Facsimile:    (703) 847-5334
Attention:    Chief Financial Officer

Event of Default Redemption Notice

Ladies and Gentlemen:

   Reference is made to the senior subordinated convertible note issued by The Allied Defense Group, Inc., a Delaware corporation (the "**Company**"), to Kings Road Investments Ltd. (the "**Holder**" or undersigned), in the original principal amount of $12,500,000 (the "**Note**"), pursuant to the Securities Purchase Agreement, dated as of March 9, 2006 (the "**Securities Purchase Agreement**"), by and among the Company and the investors listed on the Schedule of Buyers attached thereto. Any capitalized term used herein and not defined herein shall have the meaning assigned to it in the Note or the Securities Purchase Agreement.

   This notice constitutes an Event of Default Redemption Notice in accordance with the terms of Section 4(b) of the Note. As you are aware, the Company disclosed in its Annual Report on Form 10-K/A filed on November 7, 2006 for the period ending December 31, 2005 (the "**2005 10-K**") that, among other things, it has identified material weaknesses in the Company's internal controls over financial reporting, including, without limitation, (i) deficiencies in the design of controls in place relating to estimates for warranty reserves at the Company's Belgian subsidiary, VSK Electronics, (ii) deficiencies in the accounting for foreign currency exchange contracts of the Company's foreign operations, (iii) deficiencies in accounting for contract costs at the Company's Belgian subsidiary, MECAR SA, (iv) deficiencies in accounting for inventory costs at certain of the Company's U.S. subsidiaries, (v) the lack of documentation and testing of the Company's IT general controls, and (vi) the Company's inadequate financial reporting processes.

# POLYGON

Among other things, and without limiting any rights the undersigned may have under the Securities Purchase Agreement, the Note or otherwise, Events of Default under Section 4(a)(x) of the Note have occurred arising from the Company's breach of the representations and warranties contained in (i) Section 3(aa) ("Internal Accounting and Disclosure Controls") of the Securities Purchase Agreement, pursuant to which the Company represented that the Company maintained a system of internal controls sufficient to provide certain reasonable assurances; (ii) Section 3(m) ("No Undisclosed Events, Liabilities, Developments or Circumstances") of the Securities Purchase Agreement, pursuant to which the Company represented that no event or circumstance had occurred or existed that would be required to be disclosed by the Company on a registration statement, and that had not been publicly announced; and (iii) Sections 3(k) ("SEC Documents; Financial Statements") and 3(jj) ("Disclosure"), pursuant to which the Company represented that its SEC filings and the disclosure materials given to the Buyers did not, when taken as a whole, contain any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made therein, in light of the circumstances under which they were made, not misleading.

The Company may also have breached other provisions of the Securities Purchase Agreement and the other Transaction Documents as well, including, without limitation, the representations and warranties contained in Sections 3(l) ("Absence of Certain Changes") and 3(q)(ix) ("Equity Capitalization"), and the covenant contained in Section 4(c) ("Reporting Status") of the Securities Purchase Agreement.

In addition, as set forth in our Event of Default Redemption Notice of December 18, 2006 (the "**December Notice**"), the Company's failure to pay certain Registration Delay Payments (as such term is defined in the Registration Rights Agreement) constitutes an Event of Default as set forth in Section 4(a)(v) of the Note. The Company has explicitly acknowledged the existence of this Event of Default. Although the Company paid such Registration Delay Payments after receipt of the December Notice, we reserved all our rights with respect thereto in connection with our withdrawal of the December Notice and therefore, such Event of Default remains outstanding. We are sure you are also aware that if the Company fails to cause the Registration Statement required to be filed pursuant to the Registration Rights Agreement to be declared effective by the SEC on or prior to March 29, 2006, a further Event of Default will occur as set forth in Section 4(a)(i) of the Note.

As a result of the occurrence of the above mentioned Events of Default, the undersigned hereby notifies the Company of its election to exercise its redemption right pursuant to Section 4(b) of the Note and hereby submits this Event of Default Redemption Notice. The undersigned hereby elects to redeem the entire Note in full at the Event of Default Redemption Price. The Company shall pay to the undersigned

# POLYGON

Holder the Event of Default Redemption Price within five (5) Business Days from the receipt of this Event of Default Redemption Notice pursuant to Section 12(a) of the Note. For purposes of calculating the Event of Default Redemption Price, the applicable Interest Rate shall be 12.5% for the period commencing on March 9, 2006 and through

the date of payment of the Event of Default Redemption Price, as set forth in Section 2 of the Note.

This letter is without prejudice to the undersigned, and the undersigned fully and specifically reserves any and all rights, powers, privileges and remedies under the Transaction Documents. Nothing herein shall be construed to suggest that there are not currently existing other Events of Default, and the undersigned reserves all of its rights with respect to any such Events of Default.

This letter shall not entitle the Company or any other party to further notice or demand.

Sincerely yours,

KINGS ROAD INVESTMENTS LTD.

By:

Name: *Brandon L. Jones*
Title: *Co-head, Private Investing H*
Address:

c/o Polygon Investment Partners LP
598 Madison Avenue, 14th Floor
New York, New York 10022

Cc:    Robert P. Dowski

Baxter, Baker, Sidle, Conn & Jones
Sun Trust Building
Suite 2100
120 E. Baltimore Street
Baltimore, Maryland 21202
Telephone: (410) 230-8122
Facsimile: (410) 230-3801
Attention: James E. Baker, Jr., Esq.

EXHIBIT F

# POLYGON

Polygon Investment Partners LP    Main  + 1 212 359 7300
598  Madison Avenue    Fax   + 1 212 359 7301
14th Floor
New York, NY 10022
United States of America

March 2, 2007

**VIA FACSIMILE AND
OVERNIGHT COURIER**

The Allied Defense Group, Inc.
8000 Towers Crescent Drive
Suite 260
Vienna, Virginia 22182
Telephone:   (703) 847-5268
Facsimile:    (703) 847-5334
Attention:   Chief Financial Officer

Event of Default Redemption Notice

Ladies and Gentlemen:

      Reference is made to (i) the senior subordinated convertible note issued by The Allied Defense Group, Inc., a Delaware corporation (the "**Company**"), to Kings Road Investments Ltd. (the "**Holder**" or undersigned), in the original principal amount of $12,500,000 (the "**Note**"), pursuant to the Securities Purchase Agreement, dated as of March 9, 2006 (the "**Securities Purchase Agreement**"), by and among the Company and the investors listed on the Schedule of Buyers attached thereto and (ii) that certain Event of Default Redemption Notice by the Holder, dated February 20, 2007, provided to the Company in accordance with the terms of Section 4(b) of the Note (the "**Event of Default Redemption Notice**"). Any capitalized term used herein and not defined herein shall have the meaning assigned to it in the Event of Default Redemption Notice.

      Pursuant to the Event of Default Redemption Notice, the Holder has elected to redeem the entire Note in full at the Event of Default Redemption Price. In accordance with the terms of the Note, the Company was obligated to pay the Holder the Event of Default Redemption Price no later than February 27, 2007. However, the Company failed to do so.

      As you are aware, the failure to pay the Event of Default Redemption Price prior to the date of this letter, constitutes an additional Event of Default as set forth in Section 4(a)(v) of the Note.

      Please be advised that the Holder reserves the right to take any and all actions available to the Holder at law with respect to this Event of Default and the other Events of Default described in the Event of Default Redemption Notice.

10360702.1

# POLYGON

This letter is without prejudice to the undersigned, and the undersigned fully and specifically reserves any and all rights, powers, privileges and remedies under the Transaction Documents. Nothing herein shall be construed to suggest that there are not currently existing other Events of Default, and the undersigned reserves all of its rights with respect to any such Events of Default.

This letter shall not entitle the Company or any other party to further notice or demand.

Sincerely yours,

KINGS ROAD INVESTMENTS LTD.

By: _____
Name: Brandon L. Jones
Title: Co-Head, Private Investments IS
Address:
    c/o Polygon Investment Partners LP
    598 Madison Avenue, 14th Floor
    New York, New York 10022

Cc:    Robert P. Dowski

       Baxter, Baker, Sidle, Conn & Jones
       Sun Trust Building
       Suite 2100
       120 E. Baltimore Street
       Baltimore, Maryland 21202
       Telephone: (410) 230-8122
       Facsimile: (410) 230-3801
       Attention: James E. Baker, Jr., Esq.

EXHIBIT G

# POLYGON

Polygon Investment Partners LP   Main  + 1 212 359 7300
598  Madison Avenue              Fax   + 1 212 359 7301
14th Floor
New York, NY 10022
United States of America

March 30, 2007

**VIA FACSIMILE AND**
**OVERNIGHT COURIER**

The Allied Defense Group, Inc.
8000 Towers Crescent Drive
Suite 260
Vienna, Virginia 22182
Telephone:   (703) 847-5268
Facsimile:    (703) 847-5334
Attention:   Chief Financial Officer

Event of Default Redemption Notice

Ladies and Gentlemen:

Reference is made to (i) the senior subordinated convertible note issued by The Allied Defense Group, Inc., a Delaware corporation (the "**Company**"), to Kings Road Investments Ltd. (the "**Holder**" or undersigned), in the original principal amount of $12,500,000 (the "**Note**"), pursuant to the Securities Purchase Agreement, dated as of March 9, 2006 (the "**Securities Purchase Agreement**"), by and among the Company and the investors listed on the Schedule of Buyers attached thereto, (ii) that certain Registration Rights Agreement (the "**Registration Rights Agreement**"), dated as of March 9, 2006, by and among the Company and the investors signatory thereto and (iii) those certain Event of Default Redemption Notices by the Holder, dated February 20, 2007 and March 2, 2007, respectively, provided to the Company in accordance with the terms of Section 4(b) of the Note (the "**Event of Default Redemption Notices**"). Any capitalized term used herein and not defined herein shall have the meaning assigned to it in the Event of Default Redemption Notices.

In Section 2 of the Registration Rights Agreement, the Company agreed to use its best efforts to cause the Registration Statement to be declared effective with the SEC by January 28, 2007 (the "**Effectiveness Deadline**"). Because the Registration Statement has not been declared effective with the SEC as of the date of this letter, which is more than sixty (60) days after Effectiveness Deadline, pursuant to Section 4(a)(i) of the Note an additional Event of Default has occurred and is continuing.

Pursuant to the Event of Default Redemption Notices, the Holder has elected to redeem the entire Note in full at the Event of Default Redemption Price. In

10389396.3

# POLYGON

accordance with the terms of the Note, the Company was obligated to pay the Holder the Event of Default Redemption Price no later than February 27, 2007. However, the Company failed to do so.

As you are aware, the failure to pay the Event of Default Redemption Price prior to the date of this letter, constitutes an additional Event of Default as set forth in Section 4(a)(v) of the Note.

Please be advised that the Holder reserves the right to take any and all actions available to the Holder at law with respect to this Event of Default and the other Events of Default described in the Event of Default Redemption Notice.

This letter is without prejudice to the undersigned, and the undersigned fully and specifically reserves any and all rights, powers, privileges and remedies under the Transaction Documents. Nothing herein shall be construed to suggest that there are not currently existing other Events of Default, and the undersigned reserves all of its rights with respect to any such Events of Default.

This letter shall not entitle the Company or any other party to further notice or demand.

Sincerely yours,

KINGS ROAD INVESTMENTS LTD.

By:

Name: Erik M. W. Caspersen
Title:   Authorized Signatory

cc:    Robert P. Dowski

Baxter, Baker, Sidle, Conn & Jones
Sun Trust Building,    Suite 2100
120 E. Baltimore Street
Baltimore, Maryland 21202
Telephone: (410) 230-8122
Facsimile: (410) 230-3801
Attention: James E. Baker, Jr., Esq.

10389396.3